**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|

MARK J. WILSON,

   **Plaintiff,**

**v.**                 **Case No.:  PWG-14-2317**

CITY OF GAITHERSBURG,

   **Defendant.**

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

   Plaintiff Mark J. Wilson filed suit, *pro se*, against Defendant City of Gaithersburg ("the City"), alleging that he was discriminated against in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112–12213, when he was terminated for requesting an accommodation for his disability.  Compl., ECF No. 1; *see* Civil Cover Sheet § VI, ECF No. 1-2. Defendant has moved to dismiss Plaintiff's hostile work environment and failure to accommodate claims for failure to state a claim and for summary judgment on Plaintiff's retaliation claim, ECF No. 11.[1]  Def.'s Mem. 1.  Because Plaintiff has stated a claim for failure to accommodate but not hostile work environment, Defendant's motion to dismiss will be granted in part and denied in part.  Because Plaintiff has failed to establish a prima facie case of retaliation, Defendant's motion for summary judgment will be granted as to that claim.

---

[1] Defendant identifies these three claims in Plaintiff's Complaint, which does not have separately numbered counts, and Plaintiff does not contest this characterization.  Defendant presents its motion as one to dismiss or, in the alternative, for summary judgment, but Defendant seeks dismissal of the hostile work environment and failure to accommodate claims and summary judgment on the retaliation claim.  The parties fully briefed the motion.  *See* ECF Nos. 11-1, 15, 16.  A hearing is not necessary.  *See* Loc. R. 105.6.

## I.    FACTUAL BACKGROUND

For the purposes of resolving the City's motion to dismiss, I accept as true the following facts alleged in Plaintiff's Complaint. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff worked as a Project Manager in the Facilities Management Division of the City's Department of Public Works and Engineering ("DPW") for eight years. Compl. ¶¶ 1, 5, ECF No. 1.  He "has several disabilities," including "ADHD [attention-deficit/hyperactivity disorder]," for which he takes an "antidepressant" that has caused him to take "several days to recover" from "a perceived threat or attack," during which time his "work and health at home" were affected and he experienced "bouts of anxiety and depression." *Id.*   ¶¶ 27–28.   Thus, when Plaintiff's supervisor, Peter Geiling, "threaten[ed] others and rant[ed] in Wilson['s] presence in Winter and Spring 2009 and again in Spring 2010, these "several episodes . . . rattle[d] Wilson." *Id.* ¶¶ 20–21.  He "confronted his Boss in writing" in 2009 and then "file[d] a work place compliant [sic]" in Spring 2010.  *Id.*   On May 6, 2010, Wilson  received "a letter from the [City] Attorney stating that the City's third party investigator had ruled that Wilson's boss's behavior toward Wilson several months ago did not create a hostile work environment, but was characterized as just Geiling's 'management style.'"  *Id.* ¶ 2.

Wilson was informed on May 7, 2010 that he was terminated, but would be paid through June 30, 2010.  Compl. ¶¶ 1, 5, 7.  The City informed him that DPW "did not need him as a project manager in the Facility Department and would use his wages to create a new position in the Engineering Services Department for a project manager working with storm water infrastructure."  *Id.* ¶ 5.  Yet, as Plaintiff reads them, the City's budget records "state that Wilson['s] position was not eliminated after Wilson was terminated in May 2010," and "the new

Project Manager position for working with storm water infrastructure did not exist after Wilson's termination and the next year after that." *Id.* ¶¶ 13–14.

For purposes of Defendant's motion for summary judgment on Plaintiff's retaliation claim, I consider the facts in the light most favorable to Plaintiff as the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009). Although the events described above are undisputed, the documentary evidence establishes a different timeframe for the relevant events: Plaintiff voiced complaints about his supervisor's behavior on January 7, 2011 and February 7, 2011. James Arnoult Aff. ¶¶ 14–15, Def.'s Mem. Ex. 1, ECF No. 11-3 (affidavit of Director of the Department of Public Works and Engineering for the City); Jan. 7, 2011 Ltr. from Steven B. Israel, M.D., Def.'s Mem. Ex. 2, ECF No. 11-4 (stating that Plaintiff needed "to take time off" for "an exacerbation of his illness"); Feb. 7, 2011 Work-Related Illness Report, Def.'s Mem. Ex. 4, ECF No. 11-6. The City notified Plaintiff on May 4, 2011 that it had hired an outside attorney to investigate Plaintiff's allegations of a hostile work environment and concluded, based on the attorney's report, that Plaintiff simply described a "management style" and not a hostile work environment for which the City needed to take corrective action. May 4, 2011 Mem. to Wilson, Def.'s Mem. Ex. 5, ECF No. 14-1. The City informed Plaintiff on May 10, 2011 that his employment would end that day, although he would be paid through the end of June 2011. May 10, 2011 Mem. to Wilson, Def.'s Mem. Ex. 6, ECF No. 11-7; *see* Pl.'s Aff. ¶ 9, Pl.'s Opp'n Ex. F, ECF No. 15-8 (referring to May 7, 2011 notice of dismissal).

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a claim or complaint if it fails to state a claim upon which relief can be granted. *Tucker v. Specialized Loan Servicing, LLC*, ---- F. Supp. 3d ----, 2015 WL 452285, at *8 (D. Md. Feb. 3, 2015).  In resolving a Rule 12(b)(6) motion, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff is proceeding *pro se*, and his Complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff from pleading a plausible claim. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. District courts are not required to be mind readers, or to conjure questions not squarely presented to them.

*Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at * 1 (4th Cir. 1992) (per curiam) (internal citations omitted).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). When considering cross-motions for summary judgment, "the court must view each motion in a light most favorable to the non-movant." *Linzer v. Sebelius*, No. AW-07-597, 2009 WL 2778269, at *4 (D. Md. Aug. 28, 2009); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

## III.    DISCUSSION

### A.  Hostile Work Environment

Defendant urges dismissal of Plaintiff's hostile work environment claim for "failure to adequately allege the existence of a disability"; failure to allege at all "that Mr. Wilson himself was subjected to unwelcome harassment"; and failure to show that the "workplace environment was both subjectively and objectively hostile." Def.'s Mem. 10–11. It does not appear in Plaintiff's Complaint that he seeks to bring a claim for hostile work environment, yet it bears mention that Plaintiff states in his Opposition that "the actions of his supervisor Pete Geiling" created "a hostile environment." Pl.'s Opp'n 14. Plaintiff defines "hostile environment" as "'an environment unfavorable to health or well-being.'" *Id.* (quoting Pl.'s Aff. ¶ 20).

Yet, hostile environment in the context of ADA claims is a term of art.  To state a claim for hostile work environment, Plaintiff must allege

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer."

*Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).  Plaintiff does not allege that *he* "was subjected to unwelcome harassment."  *See id.*  Rather, he claims that his supervisor "threaten[ed] *others* and rant[ed] in Wilson['s] presence," which "rattle[d] Wilson," and at one time "rattled Wilson so much that his Doctor issued a two week medical leave and proscribed [sic] medication to restore Wilson's mental health back."  Compl. ¶¶ 20–22 (emphasis added).  He "confronted his Boss in writing about it, and told him to stop this behavior because it was affecting Wilson's work."  *Id.* ¶ 21.  These allegations do not demonstrate that his supervisor's behavior was directed at him.

Additionally, to plead that the environment is "sufficiently severe or pervasive," Plaintiff must allege "not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Fox*, 247 F.3d at 178.  To determine whether an environment is objectively hostile, the Court considers "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993))).  Plaintiff claims that his supervisor's "ranting" interfered with his ability to work, but he has not alleged that it happened frequently.  Further, he has not claimed that the "ranting" against other people was

either "physically threatening or humiliating" for him as someone who was not the subject of the rants. Plaintiff's allegations are insufficient to state a claim for hostile work environment under the ADA. *See id.*; *Iqbal*, 556 U.S. at 678–79. Defendant's motion to dismiss is granted as to Plaintiff's hostile work environment claim. *See* Fed. R. Civ. P. 12(b)(6).

### B.  Failure to Accommodate

To state a claim for failure to accommodate under the ADA, Plaintiff must allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citation omitted). Defendant argues for dismissal solely on the basis that Plaintiff "has not properly alleged that he is disabled under the ADA." Def.'s Mem. 12.

The relevant ADA definition of disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The ADA identifies "concentrating, thinking, communicating, and working" among other "major life activities." 42 U.S.C. § 12102(2); *see Pisani v. Baltimore City Police*, No. WDQ–12–1654, 2013 WL 4176956, at *7 (D. Md. Aug. 14, 2013) (quoting 42 U.S.C. § 12102(2)).

> An impairment "substantially limits" one of these activities if the plaintiff is "'significantly restricted'" in that activity. *White v. Home Depot, U.S.A., Inc.,* No. DKC–13–624, 2013 WL 4501328, at *3 (D. Md. Aug. 21, 2013) (quoting *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467 (4th Cir. 2002)); *see* 29 C.F.R. § 1630.2(j)(1). "'[I]n determining whether an impairment is substantially limiting, courts may consider the "nature and severity of the impairment," the "duration or expected duration of the impairment," and the "permanent or long term impact" of the impairment.'" *White*, 2013 WL 4501328, at *3 (quoting *Pollard*, 281 F.3d at 467–68 (quoting 29 C.F.R. § 1630.2(j)(2))).

*Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 488 (D. Md. 2013). Plaintiff claims that he "has several disabilities," including "ADHD [attention-deficit/hyperactivity disorder]," for which he takes an "antidepressant" that has caused him to take "several days to recover" from "a perceived threat or attack," during which time his "work and health at home" were affected and he experienced "bouts of anxiety and depression." Compl.   ¶¶ 27–28.   Stated differently, he has alleged "a physical or mental impairment" (ADHD) that "substantially limits" (by requiring medication that prevents him from working under certain recurring circumstances, that is, when his supervisor is "ranting") a "major life activit[y]" (work).  *See* 42 U.S.C. § 12102(1); *Wonasue*, 984 F. Supp. 2d at 488.  Thus, he adequately alleged that he has a disability within the meaning of the statute.  *See Rhoads*, 257 F.3d at 387 n.11.  Defendant's motion to dismiss is denied as to Plaintiff's failure to accommodate claim. *See Iqbal*, 556 U.S. at 678–79; Fed. R. Civ. P. 12(b)(6).

### C.  Retaliation

"[U]nder the burden-shifting method of proof, to establish a prima facie case of retaliation, a plaintiff must show that: (1) []he engaged in a protected activity; (2) [his] employer acted adversely against [him]; and (3) [his] protected activity was causally connected to [his] employer's adverse action."  *Rhoads*, 257 F.3d at 392.  According to Defendant, the causal relationship must be one of "but-for causation," that is, the employer would not have taken the adverse employment action against the plaintiff if the employer were not trying to retaliate against the plaintiff for engaging in a protected activity. Def.'s Mem. 12 (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, ---- U.S. ----, 133 S. Ct. 2517, 2528 (2013) (discussing Title VII standard)).  Defendant notes, *id.*, that the Fourth Circuit applied the "but-for" standard to an ADA case in *Staley v. Gruenberg*, 575 F. App'x 153, 155 (4th Cir. 2014), and Defendant lists cases in other jurisdictions where courts have done the same.  But, *Staley* is an unreported

8

opinion, and neither Defendant nor my independent research has identified any binding precedent for applying this standard.

Regardless, Plaintiff has failed to establish the third element. The undisputed evidence establishes that Plaintiff voiced complaints about his supervisor's behavior on January 7, 2011 and February 7, 2011.  Arnoult Aff. ¶¶ 14–15.  The City informed Plaintiff on May 10, 2011 that his employment would end that day, although he would be paid through the end of June 2011. May 10, 2011 Mem. to Wilson.  Thus, more than three months passed between Plaintiff's last protected action and the termination of his employment, too long a period for Plaintiff to establish a causal relationship on temporal proximity alone. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citation omitted); *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (holding that "[t]he district court correctly concluded that Horne failed to produce sufficient evidence of such a causal connection" where "Horne's only evidence of causation is that she was fired two months after she accused Anderson of discrimination," because "a lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation'" (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *Westmoreland v. Prince George's County, Md.*, 876 F. Supp. 2d 594, 607–08 (D. Md. 2012) ("Although there is no bright-line rule on the issue of temporal proximity, the Fourth Circuit has held that a lapse of over three months between the protected activity and the alleged retaliation is too long to give rise to an inference of causality.").

Of course, temporal proximity is not a plaintiff's only means of showing a causal connection. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007); *Foster v. Univ. of Md. E. Shore*, 908 F. Supp. 2d 686, 706–07 (D. Md. 2012). A court "'may look to the intervening period for other evidence of retaliatory animus' which 'may be used to establish causation.'" *Westmoreland*, 876 F. Supp. 2d at 607–08 (quoting *Lettieri*, 478 F.3d at 650). But, Plaintiff does not offer any such evidence.[2] Therefore, Plaintiff has failed to establish a prima facie case of retaliation. *See Rhoads*, 257 F.3d at 392. Defendant is entitled to summary judgment on this claim. *See* Fed. R. Civ. P. 56(a).

## ORDER

Accordingly, it is, this 3rd day of August, 2015, hereby ORDERED that

1.  Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment, ECF No.

    11, IS GRANTED IN PART and DENIED IN PART, as follows:

---

[2] Plaintiff makes much of the fact that the City's budget reports still listed his position in the following fiscal year, and the new position was not filled promptly. Compl. ¶¶ 13–14; Pl.'s Opp'n; *see* Pl.'s Opp'n Exs. A & H, ECF Nos. 15-3 & 15-10 (job postings printed in January 2012 and July 2012). But, neither occurred prior to Plaintiff's termination. *See Westmoreland*, 876 F. Supp. 2d at 607–08. Moreover, while the budget reports Plaintiff attaches to his Opposition list "1" employee next to Plaintiff's position for "FY 12," elsewhere they list "0" employees for the same position for the same fiscal year, making it unclear whether his position was eliminated that year. DPW Staffing Summaries, Pl.'s Opp'n Exs. C & D, ECF Nos. 15-5 & 15-6. Further, Defendant explained that, although "[a]fter Mr. Wilson was terminated, the City began interviewing applicants for the position of Storm Water Management Coordinator," none of the initial interviewees were "suitable," and then "efforts to fill the position . . . were put on hold for several months while the City attempted to fill Mr. Geiling's former position," because the individual hired for the new position "was going to have to work closely with the Capital Projects and Facilities Director for the DPW, Mr. Geiling's former position, and the City felt that the new Capital Projects and Facilities Director should be involved in the hiring process for the position of Storm Water Management Coordinator." Arnoult Aff. ¶¶ 16–17. Plaintiff has not refuted this evidence.

    a.   Defendant's motion to dismiss Plaintiff's hostile work environment claim IS GRANTED;

    b.   Plaintiff's hostile work environment claim IS DISMISSED;

    c.    Defendant's motion to dismiss Plaintiff's failure to accommodate claim IS DENIED; and

    d.   Defendant's motion for summary judgment on Plaintiff's retaliation claim IS GRANTED;

2.   This case shall proceed as to Plaintiff's failure to accommodate claim only; and

3.   The Clerk SHALL SEND a copy of the Memorandum and Order to Plaintiff.

I will enter a Case Management Order, Scheduling Order, and Discovery Order to govern the remainder of the case.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb